The case will be taken under advisement. Our next case for this morning is Dotson v. United States. Mr. Goodson. Good morning, Your Honors. May it please the Court, my name is Don Goodson and I represent Petitioner-Appellant Stephen Dotson. Your Honors, the District Court erred in denying Mr. Dotson's 2255 petition for two principal reasons. First, as this Court effectively held in United States v. DDB, Indiana attempted robbery is not a violent felony under the Armed Career Criminal Act, or ACCA. Second, without the Indiana attempted robbery conviction, only two relied upon ACCA predicates remain, and the government cannot substitute new predicates on collateral review to make up the gap. So is there a difference when you say new? I can think of three different meanings of the word. One meaning of new may be that no one ever mentioned it anywhere, but that's not the case here. Another meaning of new may be that it was mentioned in one part of the PSR, but it wasn't actually designated as an ACCA predicate. And a third meaning of the word new is no one's even, you know, maybe it's in a different part of the PSR, but it's new unless you actually argued about it before. But it seems to me Mr. Dotson has been arguing about this third predicate that's in there in a different part of the PSR. So we're not dealing with the first meaning of new, the conviction the government's now relying on. Well, looking to the Fourth Circuit's analysis in United States v. Hodge, what was critical to the Fourth Circuit's consideration there was whether the government at sentencing or before sentencing had identified this as a conviction on which it would rely to support the ACCA enhancement. And under the Fourth Circuit's reasoning, which is directly applicable here, the facts are almost identical, the government cannot identify on that predicate which it had not identified prior to sentencing to support the conviction on collateral review. So that's meaning number two, but actually don't we have here a situation where Mr. Dotson has been arguing about the Indiana burglary conviction for quite a while? Well, Your Honor, I believe you're referring to the government's point that Mr. Dotson erroneously cited DeCamp v. United States when he initially filed his Pro Se 2255 motion, in which he appears to have plainly misunderstood the record in believing that he had been sentenced based on the burglary conviction and believed that DeCamp v. United States affected that burglary conviction. Now, of course, as we noted in our reply brief, the burglary conviction did not support the enhancement then, and so it cannot support the enhancement now. Of course, he misunderstood the record, but that misunderstanding of the record does not cure or address the government's failures at sentencing. There's no dispute, right, that he has this Indiana burglary conviction? That is correct, Your Honor, but that was also true in Bryant v. United States, and it was also true in Hodge v. United States. There, for example, the unidentified ACCA predicate was actually identical to the two other ones that had been previously identified. It was possession with intent to distribute a drug substance. But I'm thinking about prejudice in a way, because whether it arose from mistake or otherwise, the Indiana burglary conviction has been focused on by both sides in this case, the government and Mr. Dotson. And I can imagine a situation where there's some lengthy list of old convictions in a PSR and nobody's really focused on it, and I have some sympathy for the idea that it would be very inefficient for everyone, the government and defendants, to have to fully brief every conviction that shows up there, because, you know, if the government's relying on three or four or some number, there's some reliance interest in saying, well, that's what I'm defending myself against. But I wonder if this is that case, if, in fact, there isn't the kind of surprise and inefficiency and all the rest of it that we want to avoid. Well, Your Honor, I believe your point actually perhaps raises maybe two or three points that are sort of embedded in there. The first, and these are issues that the Fourth Circuit addressed in Hodge, in which it noted, for example, that at sentencing, the government bears the burden of proof, the requirement to provide notice of the supporting convictions, and at that time, the defendant has the right to counsel and can marshal that counsel to rebut whatever convictions the government might identify. On collateral review, the defendant does not have that right to counsel. And based on those facts, it is actually more efficient for the government to identify, these are the four, five, six, how many of the convictions it believes supports ACCA enhancement? So it's not limited to three, of course. The government could say the following five things support ACCA. Correct, Your Honor. I actually think it's rather telling that the fact pattern we have here is surprisingly rare. And I think if you look at the case law, we found relatively few cases involving this fact pattern. I think it's partly because the government is already identifying four or more ACCA predicates, as the Fourth Circuit noted in its footnote addressing this point in Hodge. Doing all that at sentencing, though, would not be the lightest of endeavors. I mean, this ACCA law is as complicated as it comes. That's correct, Your Honor. And that's also why the defendant needs the benefit of counsel to help him marshal whatever argument he might have against them. Now, I will note, to Your Honor's point about the burden that it might place, the probation office already goes through and prepares the list of the defendant's criminal history conviction. The government is then obliged to identify which ones it believes will support the enhancement. Let's say the government identifies four, five, six, how many additional ones? The district court need only resolve any thorny legal ACCA questions if they're actually controverted. Under federal rules of Criminal Procedure 32 Subset I, the district court can exercise its discretion and rule only on those that would ultimately affect the sentence. But at the end of the day, it would mean that the government had satisfied its notice requirement, timely objected, and it would mean that the defendant would be able to ask his counsel to help him factually rebut the convictions or legally rebut them. And it would also mean that it would all be done at the initial sentencing rather than years later on collateral review. Why is he prejudiced by doing it years later in collateral review? If it turned out there was something wrong with the conviction or if it turned out it didn't satisfy the ACCA definition, why is it prejudicial to do it later rather than at the initial sentencing? Because Your Honor, for example, records may be lost. As we noted, he was pro se here and was basically having to craft his own legal arguments as Judge Scudder just noted. But his records weren't lost, right? I mean, so that's not this case. That's not this case. Although I will just note in my own personal experience, when I first got this case, the first thing I did was contact the Marion County Superior Court and ask for all the records in these four convictions. They initially told me they could not find the records for his attempted robbery conviction. And about a month or two later, I called them again and pressed them to please go look again. They were able to find the documents that the government cited in its supplemental appendix and which showed that he did actually have an attempted robbery conviction rather than a robbery. Because if you note, the PSR is somewhat ambiguous on this point as to whether it was an attempt or a robbery. And this was just one example of how potentially lost records down the road could affect. But why couldn't it then be the government's problem, right? At a 2255, later on, if the petitioner challenges and says, listen, there's no record of an Indiana burglary conviction and the government can't produce that evidence, if he challenges what was in the PSR and unchallenged at the time, then maybe at that point it can no longer serve as a predicate. But in a situation where there's no dispute that the conviction existed or that it qualifies as an act of predicate, I'm just struggling to see what the prejudice is. Well, there's a few reasons there, responses, Your Honor. And again, just to return to the two fundamental reasons underlying Hodge, it's about timely notice and if your honor were to permit the government years later to say, well, no harm, no foul, it would effectively mean there's no real notice requirement on the part of the government. It would also mean that the objection requirement that is imposed against defendants applies one way, only against defendants. So for example, in Hrabowski v. United States, the defendant brought a collateral challenge after Johnson knocked out one of his four active predicates. And there the court said, sure, that knocked out four, but you have these remaining three. And he said, well, no, two of them should never have been relied upon in the first place because I had had my civil rights restored on them. And the court said, fair point, but you should have brought that argument at the time of sentencing. The same reasoning should apply to the government's failures to identify and marshal the arguments that would support the convictions at the time of sentencing. Regardless of whether years later it might say, well, again, no harm, no foul because we can all admit you had this conviction. So Your Honor, again, as we just noted, this case is on all fours with the Fourth Circuit's case in Hodge. There, the defendant did not object to his PSR, neither did the government. And at the end of the day, the PSR elsewhere listed a conviction very similar to the situation here that qualified at the time as an active predicate. And on those facts, the Fourth Circuit held that the government could not substitute the new active predicate on collateral review for the reasons I just noted, notice and timely objection. Now, Your Honors, I see that my time is wrapping up. So I'd like to reserve the rest of the time for rebuttal. Thank you. That's fine. Thank you. Mr. Kirkland. Thank you, Your Honor. I may have pleased the court. Taylor Kirkland, U.S. Attorney's Office for the United States in this case. First of all, Your Honor, I just want to go through two points that my opposing counsel didn't address. That is that the armed robbery conviction and the cocaine conviction now are unchallenged in this case. Those provide two active predicates. The Williams case that this court has held conclusively shows that the cocaine conviction is an active predicate. So all we're really talking about here is burglary and attempted robbery. All except it's a lot of months. It is a lot, Your Honor. This court should affirm the ACCA-enhanced sentence based on the burglary conviction. And I want to address several of the points that were raised on Appellant's argument. First of all, there's no dispute that in a vacuum, Mr. Dotson's burglary conviction is an ACCA predicate. So Perry and Foster conclusively say that's the case. But can I just say, I have some sympathy for the idea having, I bet you probably do too in your heart of hearts, that it has been an extraordinarily complicated exercise for everyone involved, for judges, for prosecutors, for defense counsel, to wade through every state statute that was ever passed to figure out which ones are proper ACCA predicates or for that matter, usable for the career offender provisions of the guidelines and which are not. And there's also a great preference for having this sort of issue resolved at the sentencing hearing, not letting it drag on X years later when maybe the Supreme Court unexpectedly issues an opinion such as Johnson or DeCamp or whatever the opinion may be. So I don't see what's wrong with the Fourth Circuit's approach to say, government, put your cards on the table at the sentencing hearing. You've got the list of prior offenses. I think the probation office does a great job assembling them. Tell us what you want. And as Mr. Goodson points out, the defendant then has the benefit of counsel who may know how to weave through what's really a crime of violence and what isn't and what's an attempt offense, all those questions. Of course, Your Honor. And your point is well taken. Hodge may raise valid notice and process concerns in other facts. But not on the... And accuracy concerns. Absolutely, Your Honor. But there are several reasons why it's not applicable to this case. First of all, at the district court sentencing and the original conviction, Mr. Dotson was represented by counsel and he did, his counsel told the court that he was incapable of being sentenced to an amount below 15 years because 15 years is the ACA minimum. But that's because counsel was looking at these, at the three ACA predicates that the government had designated. As we now know, in hindsight, a problem because one of them wasn't. So counsel was relying on existing law. If the government had designated four, including the Indiana burglary conviction, we wouldn't even be here. I mean, you'd knock one out, no problem, three left. There we are. Understood, Your Honor. But I would respectfully point the court to the 11th Circuit's recent decision in Tribune, which we submitted a supplemental authority letter on. In that case, the same facts happened as in this case. There was no dispute that at sentencing, the defendant was an ACA offender. And on those facts, the 11th Circuit said the government bears no burden to put forth additional predicates when everybody is agreeing that this defendant will be sentenced to an ACA handsense. But that, I would say that's true at the time. The government can put all its eggs in the three predicate basket. But then if the Supreme Court changes the law, you're making a further point, which is that that freezes it in time forever. And I would say you rely on only three at your peril. I would disagree with that, Your Honor. I think that Mr. Dotson, through counsel, agreed to the fact that he was an ACA enhanced offender. And in reliance on that, the government need not put forth anything else. There are important reliance interests and efficiency concerns to having the government be able to put trust in stipulated facts or agreed upon facts. That's why courts across the country, including the Southern District of Indiana, requires parties prior to trial to stipulate to as many facts as possible. But you're asking for a one-way street. You want him to be bound to his legally mistaken agreement that those three convictions served as ACA predicates, and you want dispensation for yourself to reach into the PSR and pull out another prior offense. You wouldn't let him do that. I would actually disagree with that, Your Honor. And I think that what he's doing is not the way that Your Honor described the conduct. What Mr. Dotson is trying to do here, by using that burglary conviction five times in his 2255 briefings, including in briefings when he was represented by counsel, is attempting to take a free shot at getting resentenced. Obviously, if Mr. Dotson had not... Well, illegally, he thinks it's a legally based shot at resentencing, and you can hardly blame him. Of course, Your Honor. But if Mr. Dotson had been successful on that 2255 petition, there's no way we would be here. He would not be arguing today that the government couldn't look at the burglary conviction because that's the heart of what his 2255 petition was all about. That's the one-way ratchet that this court recognized in Light v. Carraway. It's a free shot at getting resentenced. And that further distinguishes this case from what was going on in Hodge. So are you making a futility argument that if we sent it back for resentencing, the government would just turn around and point to the burglary conviction as one of three and wind up having him an armed career criminal all over again? Well, I do think it's futile, Your Honor, because there is no dispute that he actually has this burglary conviction. I think it's also a waiver argument, and it may be an unusual waiver situation, because here, the appellant is making the exact opposite, the 180 argument from what he made below. So I do think there's a... Mr. Kirshlin, can you comment on that? I have a little trouble with that. I'm a little uneasy with that. I mean, he's pro se. I mean, you can go up and down, go up and down the pews here, up and down the elevator, and try to find somebody to make sense of this ACCA case law, and it's going to take you a while. All right? And I don't know... The fact that Mr. Dotson is running around talking about this or that conviction, I mean, we're going to hold him to that? So Your Honor, I think... He...  I'm sorry. Two points in response to that, Your Honor. First of all, in one of the briefings that he submitted in the 2255 proceeding, he was represented by counsel. He was represented by the federal defenders. So I think that automatically should take him out of the realm. But you make some points in your red brief, you know, that he's been running around in his pro se papers saying, well, I'm a career offender because I've had this Indiana burglary. And my point is, shouldn't we cut him a touch of slack? So understood, Your Honor, and... He may well not know a thing about this. And obviously, the Supreme Court and this court have found that pro se litigants are entitled to leniency. But those cases... Especially when it comes... Remembering that waiver is the intentional relinquishment of a known right. That's the classic definition of waiver. I mean, I know the government loves arguing waiver and forfeiture. And so we're sort of steeled to that. But it's intentional relinquishment of a known right when it's one of the most difficult areas of law out there. So, Your Honor, the cases, including the Osagieda case that the appellant is citing here, do stand for the proposition that the pro se litigant has to at least allege the essential facts and construct a basic argument to be entitled to this kind of leniency. And here he's not constructing the basic argument. He's actually making the inverse of the argument he's making here. So counsel, you're... And hanging your hat on this waiver argument, you're really kind of saying specific to this case, we shouldn't permit... We should permit the government to rely on this other conviction. You're not making a broader argument that it's always fair game if a conviction is later out because of an act of mistake that the government can pull something in. Or am I wrong? No, that's correct, Your Honor. And thank you for clarifying that for me. That's true that this case is somewhat anomalous. But also I... Why is it anomalous if... There are three significant controlled substance convictions on his record. That's another way of qualifying for ACCA. A good defense lawyer might stipulate that they're the three prior convictions. What's the point of contesting it? But if one of those convictions happened to be for a drug amount that's been changed, it's not... Maybe it's not even a felony anymore. Maybe it's marijuana or it's something. Things could change. And you're really going to hold the lawyer to that or the defendant to that? Your Honor, I think that's an important point. It is also the driving force behind the Fourth Circuit's decision in Hodge, in that case which is about notice to the defendant. And remember, in that case, there were two cocaine convictions and then a third reckless endangerment conviction. And the court, in looking at that and looking at the substitute predicate, which was yet another cocaine conviction, said, this seems like an intentional omission. But here, that's not what's going on here, Your Honor. And to say that Mr. Dotson didn't have notice of the existence of this burglary conviction and its potential as an ACCA predicate... Well, he has notice of any conviction that's listed in the PSR, but why he can't rely on what the government says it's going to use as ACCA predicates is a different question. So the government says we're relying on these three, but actually you've got your hand behind your back and your fingers crossed, and you said ACCA, unless we decide to use something else. I see my time is up. May I make one response, Your Honor? Yes, sure. I would just point out that not only is it in the burglary conviction in the PSR, but in the indictment at page JA-10, the burglary conviction is listed, including the reference to ACCA, the ACCA Enhancement 924E there. So I think that throughout the district court proceedings in the original conviction, Mr. Dotson knew this was going on, this burglary conviction was out there. His counsel told the court he couldn't be sentenced to anything below the ACCA enhanced sentence, and so we think that he had notice there. So we'd ask the court to refer him. Okay. Thank you. Thank you. Mr. Goodson, you can certainly have a full minute. Mr. Goodson, can I just ask you a quick question? Yes, Your Honor. Is it your position that if he's resentenced, the government still can't rely on the burglary conviction? That is correct, Your Honor.     can't rely on the burglary conviction. is that a remand is limited to the error identified by this court on appeal, and as the court noted in that opinion, the accident of a remand should not allow you to raise arguments that you could have raised at an earlier juncture. So yes, we would say that the government would be proclosed. If I may just raise three quick points in rebuttal. First, as to the Indiana dealing in cocaine conviction, I recognize that this court, since filing my opening brief, has issued three decisions, two of them precedential, foreclosing that argument, and that binds this court. But I do not waive or concede the Indiana dealing conviction and will preserve it should further review become necessary. Second, with respect to the government's point about holding Mr. Dotson to his inconsistent identification of the predicates in his briefing, I will just note the government itself was not consistent in identifying the active predicates either. In its December 18, 2015 filing, which was ECF number 18 in the lower court, it identified only three active predicates to affirm the conviction, which were burglary, robbery, and attempted robbery, not dealing in cocaine. So if we are going to hold Mr. Dotson to his incorrect identification of the predicates in the 2255 proceeding, we should do the same for the government. And, in addition, after Mr. Dotson's counsel withdrew from the case, he re-raised the substitution argument in a supplemental filing where he noted again the government cannot rely upon predicates it did not rely upon at sentencing. And I will just note that the argument was sufficiently clear to have alerted me to it. I was alerted to this argument based on his filings and didn't just come up with this argument on my own. Finally, just as with respect to the one-way ratchet point that the government pointed out in its brief and up here on an argument, the one-way ratchet issue in light was about changes in the law. And there the court said, if the defendant can benefit from a change in the law, then so too can the government. We agree. And that's why here, because there has been no change in the law with respect to the burglary conviction, the government should be bound by its identification at sentencing. And, Your Honors, because Mr. Dotson had only three active predicates, one of them is no longer valid after Johnson. He's entitled to be resentenced. Thank you. All right. Thank you very much, Mr. Goodson. And we thank you as well for accepting the appointment. Thank you. Thanks as well to Mr. Goodson.